[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for child custody, child support and other equitable relief returnable to the Waterbury Superior Court.
The plaintiff, Teresa Scionti, is the mother of two minor children, Matthew Zeghibe, born October 4, 1992 and Amelia Zeghibe, born April 3, 1984. The defendant, Charles Zeghibe, is the father of both children. The defendant's paternity is stipulated by the parties and is not a fact in dispute.
The court heard many days of testimony regarding the minor children. An attorney and a guardian ad litem were appointed by the court to represent the interests of the children.
Having heard the evidence and testimony and having taken into consideration the stautory provisions of Title 46b, Chapter 815, Connecticut General Statutes, the court makes the following findings and orders. CT Page 10466
The plaintiff-mother and the defendant-father were never married to one another, but did live together starting approximately in 1982.
The children lived, for the better part of their young lives, in the home of their paternal grandmother in Shelton, together with their father.
The plaintiff provided little, if any, custodial care for the two minor children while they were growing in their grandmother's home. Grandmother provided most of it.
In mid-1995, the paternal grandmother died. The children's lives, including their behavior and the school performance began to deteriorate and became a concern to both their mother and father.
In April, 1996 the plaintiff assumed the care and maintenance of the parties' son, Matthew. The daughter, Amelia, remained living with the defendant-father. On May 30, 1996 the plaintiff commenced this action.
Over the succeeding eighteen months the children's condition continued to deteriorate. During that time the parties sought to explore ways to keep the children safe and supervised — a task which continued to grow increasingly more difficult.
One of the most frustrating factors was the growing awareness by these now teenage children that it was now possible to play mother against father and vice versa and benefit by currying favor first with one parent and then the other.
Father eventually grew frustrated himself over the childrens' issues and the ongoing litigation which by now included numerous contempt citations, motions for sanctions, the appointment of counsel and a guardian for the minor children, Family Services intervention, more motions for contempt and numerous court appearances.
He moved, by himself, to Las Vegas, Nevada. The children lost little time reconciling with their father. The son, especially, did everything possible to coerce mom and dad into stipulating that the children have an extended visit with dad in Las Vegas and that included beginning to explore the potential for long-term CT Page 10467 residence — including inquiries about appropriate schools and the possible acquisition by dad of more spacious housing. Under the guise of summer vacation the children went to Las Vegas and lived with the defendant in his home.
The son liked the idea of permanently residing in Las Vegas and when the vacation was concluded he begrudgingly returned to mom's home in Connecticut, however he immediately began a relentless campaign to wear her down to the point that she would stipulate and agree that he could permanently move to his father's home in Las Vegas. He began to act out and to be obnoxious, uncooperative and unruly thereby greatly increasing the tensions in her home. His behavior culminated in his repeatedly jumping out of her automobile when she was stopped for traffic signals and by his running away to a vacant home and sleeping there overnight.
The plaintiff finally capitulated and appeared in court and entered into a detailed written stipulation conferring physical custody of both children to the defendant in Las Vegas.
Several months later the children were back in Connecticut claiming that life in Las Vegas with their father was not what they imagined it would be and they sought to reconcile with their mother.
The court noted at that time that the children were perilously close to being adjudicated as children from a family with special needs (FWSN), beyond the control of their parents, and committed to the Commissioner of the Department of Children and Families (DCF).
The evidence further discloses that the plaintiff's current husband is self employed and runs a tow truck business which can and has disrupted the entire family at all hours of the day and night. That was the reason given by mother as to why she and her children have been living in a house separate and apart from her current husband. She claims it was to minimize the disruptions. The defendant argued that it was due to the fact that son Matthew and the current husband have had some serious disputes which may have turned physical.
The court heard the testimony of the witness and the report from the guardian ad litem and the attorney for the minor children before reaching the following findings. CT Page 10468
The overall effect of the testimony establishes that Matthew has become more responsible and more respectful to his mother and others. His behavior is less mercurial and his grades are 5 improved.
The evidence also discloses that the daughter, Amelia, has improved academically and has been accepted into a private high school. At the time of the hearings she was enrolled in a summer program designed to help her with her math courses and to acclimate her to the school and to high school life. She has reportedly done very well through that program and was looking forward to enrolling there in September. She is also getting along very well with her mother.
The court also heard from the childrens' guardian ad litem who confirmed the reports mentioned hereinabove. She reported that it would appear to be in the childrens' interest for them to remain in their mother's custody.
For the foregoing reasons, the court finds that although the defendant-father has done as much as he could to provide a safe and structured home for his two children in Nevada, the children have not benefitted [benefited] from the relocation and have improved in every respect since returning to their mother's home. It would appear to be in their best interest to make that living arrangement an order of this court.
The court hereby grants sole legal and physical custody of Matthew Zeghibe and Amelia Zeghibe to the plaintiff and orders that the defendant-father pay to the plaintiff-mother child support in an amount which is consistent with the Child Support Guidelines.
By the Court, Joseph W. Doherty Judge